CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

September 11, 2013

LETTER TO COUNSEL:

    RE:    *Wendy Louise Stormes v. Commissioner, Social Security Administration*;
            Civil No. SAG-12-3177

Dear Counsel:

    On October 29, 2012, the Plaintiff, Wendy Louise Stormes, petitioned this Court to review the Social Security Administration's final decision to deny her claim for Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 10, 12). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (superseded by statute on other grounds). Under that standard, I will grant the Commissioner's motion and deny Plaintiff's motion. This letter explains my rationale.

    Ms. Stormes filed her claim for benefits on July 10, 2007, although she eventually amended her alleged onset date to June 16, 2010. (Tr. 41, 231-40)[1]. Her claim was denied initially on December 7, 2007, and on reconsideration on April 18, 2008. (Tr. 136-39, 143-44). After an initial hearing in 2008, an Administrative Law Judge ("ALJ") issued an opinion denying benefits. (Tr. 78-117, 122-32). Following remand from the Appeals Council, (Tr. 33-35), an ALJ held a second hearing on April 19, 2011. (Tr. 38-77). After that hearing, on May 31, 2011, the ALJ again determined that Ms. Stormes was not disabled during the relevant time frame. (Tr. 14-37). The Appeals Council denied Ms. Stormes's request for review, (Tr. 1-4), so the ALJ's 2011 decision constitutes the final, reviewable decision of the agency.

    The ALJ found that Ms. Stormes suffered from the severe impairments of borderline intellectual functioning, bipolar disorder and panic disorder, degenerative disc disease, migraine headaches, substance abuse (including significant evidence of alcoholism), mild chronic obstructive pulmonary disease, and hearing loss. (Tr. 19). Despite these impairments, the ALJ determined that Ms. Stormes retained the residual functional capacity ("RFC") to:

---

[1] Ms. Stormes also originally applied for both Supplemental Security Income ("SSI") and Disability Insurance Benefits. (Tr. 231-40). However, at her hearing following remand, she confirmed the amendment of her onset date and the limitation of her application to SSI. (Tr. 41).

> [P]erform light work as defined in 20 CFR 416.967(b), except the claimant is limited to occasional postural activities. She must never climb ladders, ropes, or scaffolds. She must avoid concentrated exposure to chemicals. She is limited to unskilled routine and repetitive tasks. The claimant can tolerate occasional interaction with others, but she cannot tolerate interaction with the general public.

(Tr. 22). After considering testimony from a Vocational Expert ("VE"), the ALJ determined that Ms. Stormes could perform work existing in significant numbers in the national economy, and that she was therefore not disabled. (Tr. 30).

Ms. Stormes presents four primary arguments on appeal, each relating to the establishment of her mental, not physical, RFC: (1) that the ALJ failed to properly evaluate the opinion of a consultative examiner; (2) that the ALJ failed to provide adequate discussion of her borderline intellectual functioning; (3) that the ALJ assigned too much weight to the opinion of a state agency physician; and (4) that the ALJ made insufficient findings regarding her mental RFC. Each argument lacks merit.

Ms. Stormes's first argument is that the ALJ assigned inadequate weight to the opinion of consultative examiner, Dr. Janet K. Anderson. Pl. Mot. 6-11. Ms. Stormes suggests that the ALJ did not provide sufficient analysis of every portion of Dr. Anderson's report, specifically the testing results and some of the functional areas which were noted to be "seriously limited." Pl. Mot. 7-8. However, an ALJ is not required to discuss each piece of evidence in the record, as long as a reviewing court can determine from the opinion "what the ALJ did and why he did it." *Piney Mountain Coal Co. v. Mays,* 176 F.3d 753, 762 n.10 (4th Cir.1999) (citing *Lane Hollow Coal Co. v. Dir., Office of Workers' Comp. Programs,* 137 F.3d 799, 803 (4th Cir. 1998)); *see also Melgarejo v. Astrue,* No. JKS 08–3140, 2009 WL 5030706, at *4 (D. Md. Dec. 15, 2009) (all holding that an ALJ's duty to explain his findings and conclusions on all material issues of fact or law is satisfied when a reviewing court can determine, from an ALJ's opinion and the evidence of record, how he reached his conclusion). I find that the ALJ's evaluation of Dr. Anderson's report was sufficient. First, the ALJ addressed his evaluation of the testing results by noting the absence of test scores during the developmental period, the prolonged period of heavy alcohol consumption, and the absence of evidence of special education or of failing any grade levels. (Tr. 21-22). Next, the ALJ noted that Ms. Stormes not only is primarily independent in her activities of daily living, but also helps care for a baby. (Tr. 22). Third, the ALJ noted that Dr. Anderson's report appeared to be "based solely upon the claimant's subjective statements during the evaluation," particularly as it pertained to her school performance and as it pertained to her GAF score. (Tr. 28-29). The ALJ made a strongly supported determination that Ms. Stormes's statements lacked credibility, specifically citing inconsistent information she provided about her activities of daily living and her consumption of alcohol, and her apparent malingering at medical appointments. (Tr. 26). In light of the substantial evidence supporting an adverse credibility determination, and the finding that Dr. Anderson's report rested almost exclusively on information provided by Ms. Stormes, I cannot find that the ALJ erred.

Ms. Stormes also notes that, when presented with a hypothetical including all of Dr. Anderson's limitations, the VE testified that all work would be precluded. Pl. Mot. 10-11 (citing (Tr. 75)). However, the ALJ is afforded "great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." *Koonce v. Apfel,* No. 98–1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999) (citing *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986)). Because, as described above, the ALJ appropriately discounted Dr. Anderson's opinion and provided a sufficient justification for the assignment of reduced weight, the ALJ did not need to include Dr. Anderson's limitations among those that he ultimately determined were justified in the RFC.

Ms. Stormes's second argument is that the ALJ did not provide sufficient analysis of how he factored her borderline intellectual functioning into her RFC. In fact, the ALJ found borderline intellectual functioning to be a severe impairment, (Tr. 19), and included RFC limitations to "unskilled routine and repetitive tasks" to account for the borderline intellectual functioning. (Tr. 22). The ALJ reviewed Ms. Stormes's mental health treatment records, (Tr. 24, 27-29), noted her extensive consumption of alcohol and the absence of school records showing significant work-related limitation of function, (Tr. 21-22), and reviewed Ms. Stormes's activities of daily living as they related to borderline intellectual functioning and other mental impairments. (Tr. 20-21, 23-25). In light of that analysis and the resulting RFC limitation to unskilled, routine, and repetitive work, remand is unwarranted.

Third, Ms. Stormes protests the ALJ's assignment of significant weight to the opinion of Dr. Lessans, noting that Dr. Lessans's opinion was written prior to the amended onset date and prior to the consultative examination of Dr. Anderson. Pl. Mot. 11. However, Dr. Lessans's opinion provided insight into Ms. Stormes's condition as of the date of his report, which, in the context of borderline intellectual functioning allegedly beginning during the developmental period, remains significant although it predated the amended onset date. (Tr. 545-63). A medical opinion is no less valid simply because it does not consider developments that may have occurred subsequent to its drafting. Additionally, while Dr. Lessans did not have the benefit of Dr. Anderson's consultative examination, he did review the consultative examination report by Dr. Freedendburg. (Tr. 562). Moreover, the ALJ did not rest his entire mental RFC assessment on the opinion of Dr. Lessans. In addition to accepting Dr. Lessans's opinion, the ALJ provided a narrative explanation regarding evidence of Ms. Stormes's functionality including literacy, activities of daily living, and social functioning, (Tr. 20-21, 23-26, 29), and assigned "little weight" (not "no weight") to the opinions of Dr. Itskowitz and Dr. Anderson. (Tr. 28-29). In total, the ALJ's opinion provides substantial evidence to justify affirmance.

Finally, Ms. Stormes contends that the ALJ need a "more detailed mental RFC assessment." Pl. Mot. 12-14. Ms. Stormes's argument consists entirely of boilerplate, with no citation to or reference to any evidence of record. Other than the arguments already addressed above, Ms. Stormes provides no analysis of how a "more detailed" assessment of any evidence, might have resulted in a different outcome. The argument therefore does not support remand.

For the reasons set forth herein, Plaintiff's motion for summary judgment (ECF No. 10) will be DENIED and the Commissioner's motion for summary judgment (ECF No. 12) will be GRANTED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge